FILED
CLERK
11/13/2026
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------X

HAUSCAR A. GARCIA,

*Plaintiff*,

-against-

UNITED STATES OF AMERICA,

*Defendant*,

--------------------------------------------------------------------X

**OPINION AND ORDER**

23-cv-5934 (JMW)

**A P P E A R A N C E S:**

David L. Henderson
Matthew Hinrichs
**Gregory Spektor & Associates P.C.**
One Cross Island Plaza, Suite 203C
Rosedale, NY 11422
*Attorneys for Plaintiff*

Robert W. Schumacher
Alina Austin
**Assistant United States Attorneys**
**Eastern District of New York**
610 Federal Plaza
Central Islip, New York 11722
*Attorneys for Defendants*

**WICKS**, Magistrate Judge:

On a sunny evening in late-July 2022, Plaintiff Hauscar Garcia ("Garcia"), driving his Cadillac Escalade, hit a United States Postal Service ("USPS") truck while the Postal truck was making a left turn. Having sustained personal injuries, Garcia commenced this action asserting negligence on behalf of the USPS that caused his injuries. The trial was bifurcated to first determine liability. As set forth below, based on the evidence presented at trial,

Plaintiff failed to meet his burden of proving that the Defendant is liable for the collision, since Plaintiff failed to establish that the USPS driver was negligent.

The following constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a)(1).

## PROCEDURAL BACKGROUND

Garcia filed suit on August 4, 2023, against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, for money damages as compensation for injuries sustained when he hit a USPS truck a year prior on July 22, 2023. (ECF No. 1.) He alleges that Postal Carrier Kin S. Chan's negligence caused the accident. (*Id.*)

In November 2025, the parties consented to the undersigned for all purposes under 28 U.S.C. § 636(c). (ECF Nos. 24, 25.) The Court held a status conference a month later, where the parties agreed that the trial would be bifurcated, with a trial as to liability to be held first. (Electronic Order dated Dec. 17, 2025.) Because claims under the FTCA are tried "without a jury," *see* 28 U.S.C. § 2402, a bench trial was scheduled for April 21, 2026. (Electronic Order dated Dec. 17, 2026).

Eleven days before trial, the parties submitted a proposed Joint Pretrial Order ("JPTO") with a list of exhibits to be offered by each party and any objections to them. (ECF No. 28.) The only objections were to Plaintiff Exhibits 1, 2, and 10. (ECF No. 28.)

Six days before trial, the parties submitted a Joint Stipulation of Facts (ECF No. 31), which the court read into the record at the start of trial (*see* Tr. at 13-14). And the day before trial, the parties submitted a Stipulation of Admissibility of Evidence at Trial, agreeing that neither party was required to establish a foundation for the stipulated evidence to be admitted. (ECF No. 33; Trial Tr. at 5 ¶ 11–13.)

The bench trial took place as scheduled (*see* Electronic Order dated Apr. 21, 2026). Garcia and Chan were the only witnesses to testify. Three months later, the parties submitted their proposed findings of fact and conclusions of law. (ECF Nos. 39, 40.) The Court now issues its findings of fact and conclusions of law.

**FINDINGS OF FACT**

Around 6:50 pm on July 23, 2022, Garcia and Chan were involved in a motor vehicle accident on Montauk Highway—east of Judson Lane—in East Hampton, New York. (Tr. at 13-14; Court Ex. 1.) At that stretch, Montauk Highway is a two-lane road separated by a double-yellow line with one lane of traffic each for east and westbound traffic. (Tr. at 13-14, 97-98; Court Ex. 1.) The weather on that day at that time was sunny (Tr. at 97). Garcia was driving a 2015 Cadillac Escalade; Chan a USPS Ford-Ultimaster flexible fuel vehicle ("Postal Truck") (Tr. at 14; Court Ex. 1) equipped with seven mirrors (Tr. at 93). The steering wheel of the postal truck is on the right-hand side to facilitate delivery of mail through the window to mailboxes which occupy the right-hand side of the road. (Tr. 93.)

Chan was delivering mail and packages for the USPS as part of his course and scope of employment (Tr. at 14; Court Ex. 1). The parties also agree that after the accident, the vehicles were not moved; so, the photos taken immediately after the accident reflect the correct position of Garcia's Escalade and Chan's Postal Truck where the accident stopped. (Tr. at 47 ¶ 1–3; 114 ¶ 9–11.)

**Garcias's Testimony**

Garcia was the sole witness for Plaintiff. At the time of the accident, he was a driver and organized "events," which he had been doing for six or seven years (Tr. at 16). He was on his way to an event when the accident happened (Tr. at 16). The weather "was clear," he testified,

"[y]ou could see everything clearly" (Tr. at 18). Garcia drove in the eastbound lane on Montauk Highway for five or six miles prior to the accident (Tr. at 21).

He testified that he saw the Postal Truck parked on the shoulder of the eastbound lane, about 150 feet in front of him. (Tr. at 23 - 25.) As he approached the driveway of 166 Montauk Highway, which is located on the westbound side, the Postal Truck suddenly cut left across the lane in front of him. (Tr. at 24 – 25.) He tried to avoid the collision and "crossed the double yellow line a little bit," but could not. (Tr. at 26.) Garcia could not remember if the Postal Truck had any brake lights or flashers on. (Tr. at 26.) He also testified that he was staying within his lane of travel prior to the crash, keeping his eyes on the road, and keeping his eyes on the shoulder of the road because it was right there and he could "see very clearly." (Tr. at 27.) Garcia testified that he was traveling about 25 to 30 miles per hour. (Tr. at 27.)

He kept the Postal Truck under his observation from when he first saw it to the time of crash. (Tr. at 29.)





Pltf. Ex. 5.

Between seeing the Postal Truck to the time of the crash, Garcia said it was 10 or 15 seconds. (Tr. at 29.) He did not slow down because the Postal Truck was stopped on the side of the road, and he only tried moving left when he saw the Postal Truck moving into the lane. (Tr. at 29.) He explained that he did not have time to beep his horn. (Tr. at 31.) He testified that he tried moving left to avoid the collision because the Postal Truck was entering the lane from the right. (Tr. at 32 ¶ 11–13.)

That explanation defies logic: if the Postal Truck were turning left, then turning left would follow, not avoid, the Postal Truck. Furthermore, both the descriptions offered at trial, supported by the photographs (Pltf. Ex. 5) show clearly Plaintiff's vehicle with both left-side wheels over the double yellow line, giving rise to an inference at least that Plaintiff may have tried to pass the Postal Truck.

Garcia testified that both his Escalade and the Postal Truck came to a stop after the crash, and neither vehicle moved. (Tr. at 36; 47.)

**Chan's Testimony**

Just prior to the Accident, Chan had come from delivering mail to the mailbox on the shoulder of 181 Montauk Highway ("181") located on the eastbound side of the road. (Tr. 98 – 100.) Chan's next delivery destination after Address 181 was an apartment complex located

across the street on the westbound side of Montauk Highway, namely, 166 Montauk Highway ("166"). (Tr. 100 -101.) Prior to departing the curb of 181, Chan checked his two left mirrors for five to ten seconds before pulling out from the shoulder and turned on his left-hand turn signal. (Tr. 102 -103.) As he departed 181 Chan saw the vehicle driven by Plaintiff in his left-hand mirror travelling eastbound, which he estimated to be "far" away and anywhere from seven to eighteen seconds behind him. (Tr. 105; 148; 58.) With that vantage point, Chan determined that Plaintiff's vehicle was sufficiently distant for him to safely merge into the eastbound lane of Montauk Highway. (Tr. 105.)

Chan was travelling approximately 20-25 miles per hour when he drove about 100 feet in the eastbound lane of Montauk Highway from 181 to make the left turn to deliver mail at 166. (Tr. 105 -106; 108; 128 -130.) Chan had his hazard lights on, along with his left turn signal. (Tr. 108.) Garcia, however, could not recall whether the Postal Truck had turn signals activated. (Tr. at 26.)

As he drove from 181 to 166, Chan testified that he continued to observe Plaintiff's vehicle from behind from his left mirror, however Plaintiff was "driving very fast" (Tr. 107), estimating that Plaintiff was traveling at a minimum rate of 40 miles per hour. (Tr. 109; 135.)

This estimate is higher than what Garcia testified, which was that he thought he was driving 25- 30 miles per hour. (Tr. at 27.) In either event, the evidence adduced amply supports the conclusion that Garcia's vehicle was travelling faster than Chan's.

Chan started to slow down to ensure no oncoming traffic and that the driveway of 166 was clear of people, children and wildlife before making the left turn. (Tr. 108 -109.) Just then, Chan observed Plaintiff's vehicle "driving in the middle" trying to "pass [him] on the left" and then the collision occurred, where Plaintiff struck the Postal Truck. (Tr. 109.) Immediately prior to

impact, Chan did not hear or perceive any screeching tires attempting to brake or even a car horn. (Tr. 109; 134.) This is consistent with Garcia's testimony that in fact he did not beep the horn. (Tr. at 31.) Also, none of the photographs indicate "skid marks" that might indicate attempted braking on Garcia's part. Rather, the photographs support Chan's version of events that Garcia was in fact attempting to pass Chan on the left and that Plaintiff crossed the double yellow lines to try to pass. (Tr. 26; 33; 66; 107.)

Chan provided a written statement that day to the USPS regarding the accident as follows:

> I'm Kin Sing Chan CCA of East Hampton Post Office. On 7-23-22 night 6:45 pm during my duty to delivery [sic] mail and package a black SUV collided with our No. 4 FFV truck. I was making a left turn into 166 Montauk Hwy with hazard light then make a signal left turn light. I need to delivery [sic] a package for one of the cottage at that address. The driver of the SUV was driving too fast and he tried to pass me on the left side of the FFV. I saw no incoming traffic on the left lane. I decided to turn left carefully. I heard a big sound of collision and something hit at the back. I was OK. The SUV driver came out to me and ask me to text the location of the address. I called back to the post office to the postmaster Anthony and let him know I had an accident.

Tr. 120 -121; Tr. 141-142; Defendant's Ex. B.

## <u>CONCLUSIONS OF LAW</u>

### A. The Federal Tort Claims Act

The FTCA provides a limited waiver of sovereign immunity for tort suits against the United States for the negligent or wrongful acts or omissions of any federal employee committed while acting within the scope of employment. 28 U.S.C. § 1346(b)(1); *Kosak v. United States*, 465 U.S. 848, 851-52 (1984) ("[The FTCA] provides generally that the United States shall be liable, to the same extent as a private party, 'for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.'"). Under the

FTCA, courts look to "state law to determine whether the government is liable for the torts of its employees." *Liranzo v. United States*, 690 F.3d 78, 86 (2d Cir. 2012); 28 U.S.C. § 1346(b)(1). Because the accident occurred in New York, New York law governs Garcia's negligence claim. *Rodriguez v. United States*, 2026 WL 1971325, at *8 (E.D.N.Y. July 8, 2026).

In an FTCA action, like most civil cases, Plaintiff must prove his claim by a preponderance of the evidence. *See Dalton v. United States*, No. 12-cv-506, 2014 WL 7423760, at *20 (E.D.N.Y. Dec. 31, 2014) (citing *Vaselli v. United States*, No. 12-cv-6221, 2014 WL 4961421, at *4 (E.D.N.Y. Oct.3, 2014) (Bianco, J.)).

**B. New York Negligence Law**

Under New York law, a plaintiff "seeking to prove a defendant's negligence must show '(1) the existence of a duty . . .; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.'" *Dooley v. United States*, 83 F.4th 156, 162 (2d Cir. 2023). A "defendant's negligence qualifies as a proximate cause where it is a substantial cause of the events which produced the injury." *Id.* at 162. Plaintiff must prove negligence by a preponderance of the evidence, which "means to prove that the fact is more likely true than not true." *Velasquez v. United States Postal Serv.*, 155 F.Supp.3d 218, 227 (E.D.N.Y. 2016).

"When a defendant violates a statute that defines the degree of care to be used under certain circumstances, the violation constitutes negligence *per se* if (1) it causes the injury, (2) the plaintiff is a member of the class intended to be benefitted by the statute, and (3) the statute is intended to protect against the very hazard that caused the plaintiff's injury." *Vaselli v. U.S.*, 2014 WL 4961421, at *5 (E.D.N.Y. Oct. 3, 2014) (Bianco, J.). "The plaintiff need not give evidence of duty or breach of duty because 'violation of the statute alone constitutes negligence.'" *Id.* (quoting *Mauro v. Costco Wholesale Corp.*, 2013 WL 3816731, at *4

(E.D.N.Y. July 22, 2013)). In particular, New York's Vehicle and Traffic Law ("VTL") "establishes rules of conduct that must be obeyed by motorists and pedestrians, and a violation of the VTL constitutes negligence *per se*." *Lee v. Charles*, 986 F.Supp.2d 277, 279 (S.D.N.Y. 2013).

Here, Plaintiff asserts that Chan violated VTL § 1162 and § 1143. Section 1162 provides that "[n]o person shall move a vehicle which is stopped, standing, or parked unless and until such movement can be made with reasonable safety." VTL § 1162. And Section 1143 provides that "[t]he driver of a vehicle about to enter or cross a roadway from any place other than another roadway shall yield the right of way to all vehicles approaching on the roadway to be entered or cross." VTL § 1143.

Defendant argues that Chan did not violate New York's VTL: he was allowed to turn left across double yellow lines into a private driveway, *see* VTL § 1126(b); he had on his left turn signal as well as his hazard lights, *see* VTL § 1163; he yielded the right of way to any oncoming traffic, *see* VTL § 1141; and he positioned the USPS Truck "in that portion of the right half of the roadway nearest to the center line thereof," *see* VTL § 1160(b). The Court agrees.

"New York law impose[s] a duty upon drivers to operate their vehicles with reasonable care taking into account the actual and potential dangers existing from weather, road, traffic, and other conditions." *Goldstein v. United States*, 9 F.Supp.2d 175, 186 (E.D.N.Y. 1998). This "requires drivers to maintain a reasonably safe rate of speed, have the automobile under reasonable control, to keep a proper lookout under the circumstances then existing to see and be aware of what was in their view, and to use reasonable care under the circumstances to avoid an accident." *Id.* at 186.

Causation "incorporates at least two separate but related concepts: cause-in-fact and proximate cause." *Vaselli*, 2014 WL 4961421, at *6. "Cause-in-fact refers to those antecedent evets, act or omissions which have so far contributed to the result that without the, it would not have occurred." *Id.* "Proximate cause serves to limit, for legal or policy reason, the responsibility of an actor for the consequences of his conduct." *Id.* Proximate or legal causation is that "which in a natural sequence, unbroken by any new cause, produces that event and without which that event would not have occurred." *Rider v. Syracuse Rapid Transit Ry. Co.*, 171 N.Y. 139, 147 (1902). "An injury or damage is proximately caused by an act, or a failure to act, whenever it appears from the evidence in the case that the act or omission played a substantial part in bringing about or actually causing the injury or damage, and that the injury or damage was either a direct result or a reasonably probable consequence of the act or omission." *Vaselli*, 2014 WL 4961421, at *6.

Plaintiff failed to establish by a preponderance of the evidence that the Defendant violated a duty of care owed to him or violated NYVTL. The evidence adduced at trial did not establish that Chan violated any provision of the VTL or that he breached a duty of care in driving the Postal Truck. The credible evidence shows that Chan did not act negligently in any manner when he attempted to turn left into 166. Rather, the evidence supports the finding that Garcia attempted to pass the Postal Truck while it was making a lawful left turn into 166. Under NYVTL § 1126(b), Chan was permitted to turn left across the double yellow line into a private driveway. He did so with his left turn signal and hazard lights on, depressing his brakes before making the turn, while at the same time yielding the right of way to oncoming westbound traffic. *See* NYVTL § 1141 ("The driver of a vehicle intending to turn to the left within an

intersection or into an alley, private road, or driveway shall yield the right of way to any vehicle approaching from the opposite direction. . .").

Indeed, the evidence supports a strong inference that Plaintiff violated the VTL. Section 1124 of the VTL expressly forbids a driver from passing "to the left side of the center of the roadway in overtaking and passing another vehicle proceeding in the same direction" and Section 1126(a) makes it unlawful to pass on the left side of a double yellow line. *See* N.Y. Veh. & Traf. Law § 1126(a); *Vaselli*, 2014 WL 4961421, at *6; *Adames*, 2010 WL 1633441, at *5-*7 (finding for defendant where plaintiff crossed double yellow line to pass a third vehicle); *O'Connor v. Lopane*, 24 A.D.3d 426, 426 (2d Dep't 2005) (same). And in fact, "a rear-end collision establishes a *prima facie* case of liability against the rear vehicle and imposes a duty of explanation on the operator of that vehicle." *Krynski v. Chase*, 707 F. Supp.2d 318, 322 (E.D.N.Y. 2009) (Mauskopf, J.).

**CONCLUSION**

For the reasons stated above, based on the evidence adduced at trial, Plaintiff failed to meet his burden of proving by a preponderance of the evidence that the United States is liable for the collision at issue and the action is dismissed. The Clerk of the court is directed to enter Judgment accordingly.

Dated: Central Islip, New York
November 13, 2026

**S O O R D E R E D:**

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge